IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

**PATRICK BISHOP, SR.,**

    **PLAINTIFF,**

**VS.**                                **CV NO.:**

**JEFFERSON STATE
COMMUNITY COLLEGE,**

    **DEFENDANT.**                 **JURY TRIAL DEMANDED**

**COMPLAINT**

## I. JURISDICTION

1. This Complaint asserts a civil rights action pursuant to 42 U.S.C. § 1983 for damages, declaratory relief, and injunctive relief to redress Defendant's violations of Plaintiff's rights pursuant to the Fourteenth Amendment to the United States Constitution. Defendant violated the Constitution by terminating Plaintiff's employment in retaliation for Plaintiff making complaints regarding race discrimination. Plaintiff seeks all damages and remedies as relief for Defendant's violation of his right to equal protection, pursuant to the Fourteenth Amendment to the United States Constitution.

2. This Complaint asserts a civil rights action pursuant to 42 U.S.C. § 1981, by and through 42 U.S.C. § 1983, for damages, declaratory relief, and injunctive relief to redress Defendant's violations of Plaintiff's rights pursuant to the

Fourteenth Amendment to the United States Constitution. Defendant violated the Constitution by terminating Plaintiff's employment in retaliation for Plaintiff making complaints regarding race discrimination. Plaintiff seeks all damages and remedies as relief for Defendant's violation of his right to equal protection, pursuant to the Fourteenth Amendment to the United States Constitution.

3. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343(4), 28 U.S.C. §§ 2201 and 2202, and 42 U.S.C. § 1981. This is a suit authorized and instituted pursuant to 42 U.S.C. § 1981 *et seq.* The jurisdiction of this Court is invoked to secure protection for and to redress the deprivation of rights and Defendant's violation of the Acts and for injunctive relief and damages.

4. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343(4), 28 U.S.C. §§ 2201 and 2202, and 38 U.S.C. § 4301 et seq. This is a suit authorized and instituted pursuant to the Uniformed Services Employment and Reemployment Rights Act (USERRA). The jurisdiction of this Court is invoked to secure protection for and to redress the deprivation of rights and Defendant's violation of the Acts and for injunctive relief and damages.

## II. ADMINISTRATIVE EXHAUSTION

5. At all times relevant to this Complaint, Defendant has employed at least fifteen (15) employees.

6. Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC), which raised claims of discrimination and retaliation in violation of Title VII.

7. As of the filing of this Complaint, Plaintiff's Charge of Discrimination remains under investigation with the EEOC.[1]

### III. PARTIES

8. At all times relevant to this Complaint, Plaintiff Patrick Bishop, Sr. (hereinafter "Plaintiff") has been a resident of Trussville, St. Clair County, Alabama. Plaintiff performed work for the Defendant in the counties composing the Northern District of Alabama during the events of this case. Thus, pursuant to 28 U.S.C. § 1391(b), venue for this action lies in the Northern District of Alabama, Southern Division.

9. Defendant Jefferson State Community College (hereinafter "Defendant") is a company registered and doing business in the State of Alabama and has sufficient minimum contacts with the State of Alabama that it is subject to service of process in Alabama. Defendant is an entity subject to suit under 28 U.S.C. § 1331 and 29 U.S.C. § 621(a)(2), and 29 U.S.C. § 201, *et seq.* Therefore, this Court has personal jurisdiction over Defendant.

---

[1] Upon closure of the EEOC's Investigation into Plaintiff's Charge of Discrimination, Plaintiff intends to seek leave to amend this Complaint to incorporate his claims under Title VII.

## IV. STATEMENT OF FACTS

10. Plaintiff hereby incorporates by reference each of the allegations contained in paragraphs 1 through 9 above.

11. Plaintiff is a United States Veteran.

12. Plaintiff is Black.

13. Defendant recruited Plaintiff to establish its Cybersecurity Certification Program.

14. Defendant hired Plaintiff on or about May 1, 2019 as its Cybersecurity Instructor.

15. After Defendant hired Plaintiff, Plaintiff recommended that Defendant hire Zane Purdy to assist with the Cybersecurity Certification Program.

16. Purdy is a United States Veteran.

17. Purdy is Black.

18. During September 2019, Defendant hired Purdy as a Co-Instructor for its Cybersecurity Certification Program.

19. Throughout their joint employment, Plaintiff and Purdy worked as Co-Instructors for Defendant's Cybersecurity Certification Program.

20. Plaintiff and Purdy shared the instruction time for Defendant's Cybersecurity Certification Program; for example, when the Cybersecurity

Certification Program met for four (4) hours, twice a week, Defendant typically paid for a total of sixteen (16) hours of labor between Plaintiff and Purdy.

21. Defendant employed Britney McClung as Coordinator of Career Programs.

22. McClung is White.

23. During 2021, McClung began displaying hostile and unprofessional behavior towards Plaintiff and Purdy.

24. On September 8, 2021, Plaintiff and Purdy met with Defendant's Workforce Education Director, Leah Bigbee, and outlined the pattern of hostile treatment that McClung had demonstrated towards Plaintiff and Purdy.

25. After meeting with Bigbee, Plaintiff discovered that McClung had demonstrated similar behavior towards Defendant's other Black employees.

26. After meeting with Bigbee, Plaintiff discovered the employees who received the least support and the most delay were Black and also former members of the United States Military.

27. From September 2021 until February 2023, when McClung demonstrated hostile or unprofessional behavior to Plaintiff and Purdy, Plaintiff relayed his concerns to Bigbee.

28. From May 2019 until December 2022, Defendant employed Plaintiff as the Primary Cybersecurity Instructor.

29. As Primary Instructor, Plaintiff typically provided the majority of instruction during the session, was the first point of contact for Defendant's students to ask specific questions on the material and made all substantial decisions regarding classes and grades. Plaintiff was also responsible for ensuring that Defendant's students had access to the class portal and that it was set up in a manner to ensure that students could receive instruction remotely in compliance with Defendant's policies.

30. On January 24, 2023, Plaintiff elected to allow Purdy to assume the Primary Instructor for the Spring 2023 Semester.

31. Defendant's Spring 2023 Semester for the Cybersecurity Certification Program began on Monday, February 27, 2023.

32. Defendant typically provided class rosters several days before the new semester began and communicated any last-minute changes to Instructors.

33. On Thursday, February 24, 2023, Purdy emailed McClung and asked if she would provide the student roster to allow him and Plaintiff to prepare for the first day of classes on February 27, 2023.

34. McClung did not respond to Purdy's February 24, 2023 request.

35. Defendant did not provide Purdy and Plaintiff with a class roster until February 27, 2023.

36. Throughout Plaintiff's employment, Defendant's Cybersecurity Program was taught entirely online through a live presentation.

37. In order for Defendant's students to access the Cybersecurity lesson or course materials, Plaintiff and Purdy needed to first add them to Defendant's online class portal.

38. Defendant's Cybersecurity Certification Program is a part-time program.

39. Defendant's Cybersecurity Certification Program is typically scheduled at night to allow students and instructors to maintain employment outside of class.

40. Plaintiff and Purdy both maintained full-time employment as Police Officers, in addition to instructing Defendant's Cybersecurity Certification Program.

41. Defendant required Instructors to be prepared and present at least thirty (30) minutes before the start of the first class.

42. Defendant required Instructors to provide a full session of learning during the first class, conduct a "first-class quiz", and collect essential documentation such as "Proof of High School Completion/GED Policy", along with multiple student releases.

43. After Defendant provided the roster for the Spring 2023 Cybersecurity Program, Purdy contacted Plaintiff to discuss the time frame needed to fully

integrate each student into the class portal and allow each student to properly prepare.

44. Due to their outside employment, and the time frame in which Defendant provided the class roster, Purdy and Plaintiff concluded they would be unable to integrate Defendant's students to the class portal in time for all students to prepare for the first Cybersecurity class.

45. Pursuant to Defendant's Instructor Handbook, Instructors are authorized to cancel or reschedule class, so long as they notify Defendant and provide a plan to make up the missed class.

46. During their February 27, 2023 conversation, Purdy made the decision to reschedule the day's lesson to the following day.

47. As Secondary Instructor, Plaintiff typically provided minor guidance throughout each lesson, was the primary point of contact for Defendant's students to ask general questions about assignments or to notify of an absence, graded assignments, collected attendance, and communicated announcements.

48. Following the conversation with Purdy, Plaintiff emailed McClung and each student on the Spring 2023 Cybersecurity roster and notified them that the first day of class had been rescheduled to February 28, 2023.

49. On February 28, 2023, McClung sent an email that Plaintiff and Purdy perceived to be aggressive and goading, which demanded to know why her office was not notified *before* Defendant's students that the class was being rescheduled.

50. McClung claimed that the decision violated the programs requirement for a set "number of contact instructional hours."

51. February 28, 2023 was not a typical scheduled class day.

52. Purdy's decision to reschedule the class to February 28, 2023 still allowed Defendant's students to receive the same "number of contact instructional hours."

53. One student was unable to attend class on February 28, 2023, and received instruction later.

54. Defendant allows students to participate in a "full grievance process" to address problems with instructors.

55. None of Plaintiff and Purdy's students initiated a grievance process regarding the rescheduling of the first Cybersecurity class.

56. All Cybersecurity students received access to the lecture from February 28, 2023.

57. On March 1, 2023, Plaintiff forwarded McClung's email to Bigbee and explained how McClung's email was the most recent example of a pattern of discriminatory behavior affecting Defendant's Black Veterans.

58. Bigbee did not take any action to correct McClung's hostile behavior.

59. Bigbee did not contact Plaintiff to discuss his concerns of discrimination.

60. On April 7, 2023, Plaintiff contacted Defendant's President, Keith Brown, and reported that McClung had engaged in a pattern of "negative treatment of African-American (particularly Veterans) employees."

61. On April 10, 2023, Brown forwarded Plaintiff's report to Defendant's Human Resources Department.

62. On April 27, 2023, Plaintiff met with Defendant's Director of Human Resources, Debbie Boone, and provided examples of the hostile emails that McClung had sent him, and explained the efforts that he and Purdy made to address McClung's discriminatory behavior with Bigbee.

63. On or about May 26, 2023, Defendant concluded its investigation into Plaintiff's report.

64. Defendant did not share the result of its investigation into Plaintiff's April 7, 2023 complaint of discriminatory behavior.

65. On June 8, 2023, Ms. McClung contacted Purdy and requested that he be the sole instructor over Defendant's Cybersecurity Program moving forward.

66. Purdy did not report Discrimination to Defendant's President, Director of Human Resources, or Director of Workforce Education.

67. Defendant did not notify Plaintiff that he would not be acting as a co-Instructor.

68. Defendant's Spring 2023 Semester for its Cybersecurity Certification Program ended on June 12, 2023.

69. On June 17, 2023, Plaintiff submitted grades for each of Defendant's Cybersecurity students.

70. After Plaintiff submitted grades, Bigbee contacted Purdy and directed him to resubmit the Spring 2023 grades.

71. From June 8, 2023 until September 5, 2023, Plaintiff attempted to clarify the status of his employment from McClung, Bigbee, and Boone, but received no response.

72. On September 11, 2023, McClung notified Plaintiff that Defendant had no assignment for him at that time.

73. On September 25, 2023, Defendant deactivated Plaintiff's employee account.

74. During the EEOC's process, Defendant held that it terminated Plaintiff's employment because it did not "want to deal" with Plaintiff after he escalated McClung's hostile email as discriminatory behavior on March 1, 2023.

## V. COUNT ONE – 42 U.S.C. §§ 1981, 1983 – Retaliatory Discharge.

75. Plaintiff hereby incorporates by reference each of the allegations contained in paragraphs 1 through 74 above.

76. Plaintiff is Black.

77. On March 1, 2023, Plaintiff reported what he reasonably felt to be Discrimination targeting Defendant's Black Instructors to Defendant's Workforce Education Director.

78. On April 7, 2023, Plaintiff reported what he reasonably felt to be Discrimination targeting Defendant's Black Instructors to Defendant's President.

79. On April 27, 2023, Plaintiff reported what he reasonably felt to be Discrimination targeting Defendant's Black Instructors to Defendant's Human Resources Director.

80. On May 26, 2023, Defendant concluded its investigation into Plaintiff's complaints.

81. On June 8, 2023, McClung contacted Purdy and requested that he be the sole instructor for Defendant's Cybersecurity Certification Program.

82. Defendant made the decision to terminate Plaintiff's employment because it did not "want to deal" with Plaintiff after he escalated McClung's hostile email as discriminatory behavior on March 1, 2023.

83. In violation of 42 U.S.C. § 1981, Defendant's decision to terminate Plaintiff's employment was motivated, in whole or in part, by his reports of discrimination to Defendant's President, Director of Human Resources, and Director of Workforce Education.

84. In violation of 42 U.S.C. § 1981, Defendant terminated Plaintiff's employment because he engaged in protected activity of opposing racial discrimination.

85. As a result of Defendant's violation of Title VII, Plaintiff has been damaged, suffering loss of pay, benefits, mental anguish.

## VI. COUNT TWO – USERRA – Retaliatory Discharge

86. Plaintiff hereby incorporates by reference each of the allegations contained in paragraphs 1 through 85 above.

87. Plaintiff is Veteran of the United States Military.

88. On March 1, 2023, Plaintiff reported what he reasonably felt to be Discrimination targeting Defendant's Veteran Instructors to Defendant's Workforce Education Director.

89. On April 7, 2023, Plaintiff reported what he reasonably felt to be Discrimination targeting Defendant's Veteran Instructors to Defendant's President.

90. On April 27, 2023, Plaintiff reported what he reasonably felt to be Discrimination targeting Defendant's Veteran Instructors to Defendant's Human Resources Director.

91. On May 26, 2023, Defendant concluded its investigation into Plaintiff's complaints.

92. On June 8, 2023, McClung contacted Purdy and requested that he be the sole instructor for Defendant's Cybersecurity Certification Program.

93. Defendant made the decision to terminate Plaintiff's employment because it did not "want to deal" with Plaintiff after he escalated McClung's hostile email as discriminatory behavior on March 1, 2023.

94. In violation of USERRA, Defendant's decision to terminate Plaintiff's employment was motivated, in whole or in part, by his reports of discrimination to Defendant's President, Director of Human Resources, and Director of Workforce Education.

95. In violation of USERRA, Defendant terminated Plaintiff's employment because he engaged in protected activity of opposing discrimination against Defendant's Veteran Instructors.

96. As a result of Defendant's violation of USERRA, Plaintiff has been damaged, suffering loss of pay, benefits, mental anguish.

## VII.  PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully prays for the following relief:

A. Grant Plaintiff a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys and those acting in concert with the Defendant and at the Defendant's request from continuing to violate the terms of the 42 U.S.C. § 1981;

B. Grant Plaintiff a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys and those acting in concert with the Defendant and at the Defendant's request from continuing to violate the terms of the USERRA;

C. Enter an Order requiring the Defendant to make Plaintiff whole by awarding reinstatement to the position he would have had, had he not been terminated;

D. Award him back pay, together with employment benefits, front pay, compensatory damages; liquidated damages; special damages; nominal damages;

E. Attorneys' fees and costs;

F. Plaintiff requests that the Court award Plaintiff equitable relief pursuant to 28 U.S.C. § 2201, 42 U.S.C. § 1981 *et seq.*, and 38 U.S.C. § 4301 *et seq.* that the actions of Defendant violated the law; and,

G. Any different or additional relief as may be determined by the Court to which Plaintiff is entitled.

_____
Allen D. Arnold

_____
Whitney Morgan Brown

**OF COUNSEL:**

ALLEN D. ARNOLD, Attorney at Law
6 Office Park Circle, Suite 209
Birmingham, AL 35223
T: (205) 252-1550
ada@allenarnoldlaw.com

**PLAINTIFF REQUESTS TRIAL BY STRUCK JURY**

_____
OF COUNSEL

**DEFENDANT'S ADDRESS:**
Jefferson State Community College
c/o Keith Brown
2601 Carson Road
Birmingham, Alabama 35215